No. 26-6092

In the
# United States Court of Appeals
for the Ninth Circuit

VALVE CORPORATION,

*Petitioner-Appellant*,

v.

USERS OF VALVE'S VIDEO GAME PLATFORM, STEAM,

*Respondents-Appellees*.

On Appeal from the United States District Court for the Western District of Washington, Case No. 2:24-cv-01717-JNW
Hon. Jamal N. Whitehead, *United States District Judge*

**OPENING BRIEF OF VALVE CORPORATION**

Michael W. McTigue Jr.
Meredith C. Slawe
Shaud G. Tavakoli
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001

Blake Marks-Dias
CORR CRONIN LLP
1015 Second Ave., Fl. 10
Seattle, WA 98104

Shay Dvoretzky
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
1440 New York Ave. NW
Washington, DC 20005
Telephone: 202-371-7000
shay.dvoretzky@skadden.com

Parker Rider-Longmaid
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
500 Boylston St.
Boston, MA 02116

*Counsel for Petitioner-Appellant Valve Corporation*

**ORAL ARGUMENT REQUESTED**

## DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1, Petitioner-Appellant Valve Corporation states that it does not have a parent company and that no publicly held corporation owns 10% or more of its stock.

# TABLE OF CONTENTS

**Page**


DISCLOSURE STATEMENT ....... i

TABLE OF AUTHORITIES ....... vi

INTRODUCTION ....... 1

JURISDICTION ....... 6

STATEMENT OF THE ISSUES ....... 7

STATEMENT OF THE CASE ....... 8

A. Factual background ....... 8

1. Valve, Steam, and the Steam Subscriber Agreement ....... 8

2. Bucher and its founder attempt to "weaponize" the arbitration agreement in the Steam Subscriber Agreement and file a parallel class action. ....... 10

3. Valve removes the arbitration clause and class-action waiver from the Steam Subscriber Agreement. ....... 12

B. Procedural background ....... 15

1. Valve seeks to enjoin Respondents' arbitrations because the parties had withdrawn their consent to arbitrate. ....... 15

2. The district court denies Valve's request for a preliminary injunction. ....... 16

3. The district court certifies its order for interlocutory appeal, and this Court accepts the appeal. ....... 18

SUMMARY OF ARGUMENT ....... 19

**TABLE OF CONTENTS**
(continued)

**Page**

STANDARD OF REVIEW ........................................................................26

ARGUMENT........................................................................................26

I. Valve is likely to succeed on the merits because the dispute-resolution provisions in the Current Agreement are enforceable. ..........................................................................27

A. The Current Agreement is procedurally fair because Respondents had a meaningful choice about whether to accept the Current Agreement's terms. ......................................28

1. Valve's presentation of the Current Agreement comports with all the factors Washington courts use to assess meaningful choice. ..............................................29

2. Conditioning a benefit—as opposed to compliance with a preexisting legal duty—on acceptance of terms doesn't make an agreement procedurally unconscionable. ...................................................................33

a. Courts recognize that a party's conditioning an agreement to provide a benefit on acceptance of terms isn't procedurally unconscionable unless the party already has a duty to provide the benefit........................................33

b. Conditioning continued access to licensed software on acceptance of the operative license terms isn't procedurally unconscionable. ........................................................35

c. The Current Agreement's dispute-resolution provisions aren't procedurally unconscionable because Respondents received the benefit of the bargain they struck. ............................................37

**TABLE OF CONTENTS**
(continued)

**Page**

3. The district court's reasoning lacks merit. .........................39

a. Steam users didn't forfeit any vested property right if they didn't accept the Current Agreement. ..............................................................39

b. The district court's approach of ignoring the contractual limitations on license terms would undermine modern contracting and digital licensing more broadly, all to ensure unrestricted, extracontractual access to leisure activities.......................................................................40

c. Respondents could have stopped using Steam while arbitrating. ......................................................43

d. Valve could communicate contract terms directly to Steam users worldwide in the ordinary course of business. .....................................44

B. The dispute-resolution provisions in the Current Agreement are substantively fair................................................47

1. An agreement to resolve pending disputes in another forum is not substantively unconscionable.........48

a. Parties can agree to dispute-resolution procedures that apply retroactively to pending claims. ........................................................48

b. Parties can agree to remove a pending dispute from arbitration or change the arbitral forum.........50

2. Valve and Respondents validly retroactively agreed to litigate disputes in court, and that agreement isn't substantively unconscionable. ............................................52

## TABLE OF CONTENTS
(continued)

**Page**

3. The district court's substantive unconscionability ruling rests on legal error....53

a. The district court erred in basing its ruling on the state of the arbitrations at the time of its ruling, rather than at the time the contract was formed. ....53

b. The district court erred in concluding that Respondents would lose any substantive rights under the Current Agreement's updated terms. ....54

c. The district court erred in concluding that the forum provision is unfairly one-sided....57

II. Valve satisfied the remaining *Winter* factors....60

A. Valve is suffering the irreparable harm of being forced to arbitrate disputes it didn't consent to arbitrate. ....60

B. The balance of the equities favors enjoining the arbitrations. ....65

C. The public interest favors enjoining the arbitrations....69

CONCLUSION ....73

STATEMENT OF RELATED CASES ....74

CERTIFICATE OF COMPLIANCE ....75

CERTIFICATE OF SERVICE ....76

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*adidas America, Inc. v. Skechers USA, Inc.*,
890 F.3d 747 (9th Cir. 2018) ....................................................26

*Adler v. Fred Lind Manor*,
103 P.3d 773 (Wash. 2004) .................................................... 54, 55

*Adobe Systems Inc. v. Christenson*,
809 F.3d 1071 (9th Cir. 2015) ....................................................35

*Akopyan v. Barnhart*,
296 F.3d 852 (9th Cir. 2002) ....................................................26

*American Pipe & Construction Co. v. Utah*,
414 U.S. 538 (1974) .................................................... 56, 66

*Applied Medical Distribution Corp. v. Surgical Co. BV*,
587 F.3d 909 (9th Cir. 2009) .................................................... 63, 64

*AT&T Mobility LLC v. Bernardi*,
Nos. 11-cv-3992 & 11-cv-4412, 2011 WL 5079549
(N.D. Cal. Oct. 26, 2011) ....................................................66

*AT&T Mobility LLC v. Concepcion*,
563 U.S. 333 (2011) .................................................... 27, 49

*AT&T Mobility LLC v. Smith*,
No. 11-cv-5157, 2011 WL 5924460
(E.D. Pa. Oct. 7, 2011) ....................................................66

*Bassett v. Electronic Arts Inc.*,
No. 13-cv-4208, 2015 WL 1298644
(E.D.N.Y. Feb. 9, 2015), *report and recommendation adopted*, 93 F. Supp. 3d 95 ....................................................42

*Belton v. Comcast Cable Holdings, LLC*,
60 Cal. Rptr. 3d 631 (Ct. App. 2007) .................................................... 41, 42

*Bielski v. Coinbase, Inc.*,
87 F.4th 1003 (9th Cir. 2023) .................................................... 58, 59

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Boardman v. Pacific Seafood Group*,
822 F.3d 1011 (9th Cir. 2016) .....67

*BOKF, NA v. Estes*,
923 F.3d 558 (9th Cir. 2019) .....28

*Burnett v. Pagliacci Pizza, Inc.*,
470 P.3d 486 (Wash. 2020) ..... 54, 55

*Carnival Cruise Lines, Inc. v. Shute*,
499 U.S. 585 (1991) .....69

*Coinbase, Inc. v. Bielski*,
599 U.S. 736 (2023) .....62

*Coinbase, Inc. v. Suski*,
602 U.S. 143 (2024) ..... 19, 27, 50, 70

*Coneff v. AT&T Corp.*,
673 F.3d 1155 (9th Cir. 2012) .....26

*Dasher v. RBC Bank (USA)*,
882 F.3d 1017 (11th Cir. 2018) ..... 44, 45

*Dasher v. RBC Bank (USA)*,
745 F.3d 1111 (11th Cir. 2014) ..... 23, 51

*DeAsis v. YMCA of Yakima*,
183 Wash. App. 1018, 2014 WL 4376038
(Sept. 4, 2014) (unpublished) .....42

*Echevarria v. Aerotek, Inc.*,
No. 16-cv-4041, 2019 WL 3207812
(N.D. Cal. July 16, 2019) ..... 62, 63

*Edge v. City of Everett*,
929 F.3d 657 (9th Cir. 2019) .....27

*Environmental Protection Information Center v. Carlson*,
968 F.3d 985 (9th Cir. 2020) ..... 26, 27, 28

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*First Options of Chicago, Inc. v. Kaplan*,
514 U.S. 938 (1995) ........ 51

*Goetsch v. Shell Oil Co.*,
197 F.R.D. 574 (W.D.N.C. 2000) ........ 50

*Google LLC v. NAO Tsargrad Media*,
No. 24-cv-5423, 2025 WL 964692
(N.D. Cal. Mar. 31, 2025) ........ 63

*Haider v. Lyft, Inc.*,
No. 20-cv-2997, 2021 WL 3475621
(S.D.N.Y. Aug. 6, 2021) ........ 45, 46

*Hubbard v. City of San Diego*,
139 F.4th 843 (9th Cir. 2025) ........ 28

*In re iPhone Application Litigation*,
No. 11-md-2250, 2011 WL 4403963
(N.D. Cal. Sept. 20, 2011) ........ 42

*In re Ring LLC Privacy Litigation*,
No. 19-cv-10899, 2021 WL 2621197
(C.D. Cal. June 24, 2021) ........ 49

*In re Sussex*,
781 F.3d 1065 (9th Cir. 2015) ........ 70

*Independent Living Center of Southern California, Inc. v. Shewry*,
543 F.3d 1050 (9th Cir. 2008) ........ 26

*Ireland-Gordy v. Tile, Inc.*,
No. 25-403, 2026 WL 594859
(9th Cir. Mar. 3, 2026) ........ 51

*Jones v. Starz Entertainment, LLC*,
129 F.4th 1176 (9th Cir. 2025) ........ 3, 59, 60, 68, 69

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*LAWI/CSA Consolidators, Inc. v. Wholesale & Retail Food Distribution, Teamsters Local 63*,
849 F.2d 1236 (9th Cir. 1988) ........................................ 61, 62, 64, 65

*Lee v. Fisher*,
70 F.4th 1129 (9th Cir. 2023) ........................................69

*Leong v. Square Enix of America Holdings, Inc.*,
462 F. App'x 688 (9th Cir. 2011) ........................................ 20, 36, 37

*Leong v. Square Enix of America Holdings, Inc.*,
No. 09-cv-4484, 2010 WL 1641364 (C.D. Cal. Apr. 20, 2010) ........................................36

*M.A. Mortenson Co. v. Timberline Software Corp.*,
998 P.2d 305 (Wash. 2000) ........................................ 47, 53

*M.A. Mortenson Co. v. Timberline Software Corp.*,
970 P.2d 803 (Wash. Ct. App. 1999) ........................................ 58, 59

*Majidi-Ahy v. Classpass, Inc.*,
No. 25-cv-5003, 2026 WL 585465 (C.D. Cal. Feb. 11, 2026)........................................51

*McLaughlin Gormley King Co. v. Terminix International Co.*,
105 F.3d 1192 (8th Cir. 1997) ........................................62

*Merrill Lynch Investment Managers v. Optibase, Ltd.*,
337 F.3d 125 (2d Cir. 2003) (per curiam) ........................................61

*Miracle-Pond v. Shutterfly, Inc.*,
No. 19-cv-4722, 2020 WL 2513099 (N.D. Ill. May 15, 2020)........................................46

*Montgomery Ward & Co. v. Annuity Board of Southern Baptist Convention*,
556 P.2d 552 (Wash. Ct. App. 1976) ........................................47

*Morgan Stanley & Co. v. Couch*,
134 F. Supp. 3d 1215 (E.D. Cal. 2015) ........................................69

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Nationwide Biweekly Administration, Inc. v. Owen*,
873 F.3d 716 (9th Cir. 2017) ........ 28

*Nelson v. McGoldrick*,
896 P.2d 1258 (Wash. 1995) ........ 20, 22, 23,
........ 29, 32, 47, 48

*Newhall v. Chase Home Finance LLC*,
No. 10-cv-2624, 2010 WL 8759340
(M.D. Fla. Dec. 22, 2010) ........ 49, 50

*Newhall v. Chase Home Finance LLC*,
No. 10-cv-2749, 2010 WL 4387517
(D.N.J. Oct. 28, 2010) ........ 49, 50

*Nghiem v. NEC Electronic, Inc.*,
25 F.3d 1437 (9th Cir. 1994) ........ 51, 55

*Nicosia v. Amazon.com, Inc.*,
815 F. App'x 612 (2d Cir. 2020) ........ 49

*Nippon Shinyaku Co. v. Sarepta Therapeutics, Inc.*,
25 F.4th 998 (Fed. Cir. 2022) ........ 63

*Northwest Association of Independent Schools v. Labrador*,
166 F.4th 1148 (9th Cir. 2026) ........ 28

*Oppenheimer & Co. v. Mitchell*,
135 F.4th 837 (9th Cir. 2025) ........ 25, 61, 64, 69

*Oppenheimer & Co. v. Mitchell*,
No. 23-cv-67, 2023 WL 2428404
(W.D. Wash. Mar. 9, 2023) ........ 61, 65

*Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Independent Truck Drivers Union, Local No. 1*,
611 F.2d 580 (5th Cir. 1980) ........ 51

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*ProCD, Inc. v. Zeidenberg*,
86 F.3d 1447 (7th Cir. 1996) .......... 35, 36

*Revitch v. DirecTV, LLC*,
No. 18-cv-1127, 2018 WL 5906077
(N.D. Cal. Nov. 9, 2018) .......... 62, 63

*Romney v. Franciscan Medical Group*,
349 P.3d 32 (Wash. Ct. App. 2015) .......... 34

*Russell v. Citigroup, Inc.*,
748 F.3d 677 (6th Cir. 2014) .......... 44, 45

*Sanfilippo v. Match Group LLC*,
No. 20-55819, 2021 WL 4440337
(9th Cir. Sept. 28, 2021) .......... 48

*Satomi Owners Association v. Satomi, LLC*,
225 P.3d 213 (Wash. 2009) .......... 29, 30, 34

*Saucedo v. Experian Information Solutions, Inc.*,
No. 22-cv-1584, 2023 WL 4708015
(E.D. Cal. July 24, 2023) .......... 49, 50

*Scherk v. Alberto-Culver Co.*,
417 U.S. 506 (1974) .......... 55

*SCPS LLC v. Kind Law*,
No. 25-cv-3255, 2026 WL 96898
(C.D. Cal. Jan. 8, 2026) .......... 46, 50

*Smith v. Valve Corp.*,
No. 25-cv-1478, 2026 WL 2932023
(W.D. Wash. Sept. 30, 2026) .......... 56

*Tadych v. Noble Ridge Construction, Inc.*,
519 P.3d 199 (Wash. 2022) .......... 54, 55, 58

*Tjart v. Smith Barney, Inc.*,
28 P.3d 823 (Wash. Ct. App. 2001) .......... 32, 34

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

*Torgerson v. One Lincoln Tower, LLC*,
210 P.3d 318 (Wash. 2009) .......... 20, 29, 30, 32

*Trudeau v. Google LLC*,
816 F. App'x 68 (9th Cir. 2020) .......... 48

*UBS Securities, LLC v. Voegeli*,
405 F. App'x 550 (2d Cir. 2011) .......... 61

*Vaden v. Discover Bank*,
556 U.S. 49 (2009) .......... 6, 7

*Vargison v. Paula's Choice, LLC*,
No. 24-cv-342, 2025 WL 346197
(W.D. Wash. Jan. 30, 2025) .......... 49

*Vernor v. Autodesk, Inc.*,
621 F.3d 1102 (9th Cir. 2010) .......... 35

*Viking River Cruises, Inc. v. Moriana*,
596 U.S. 639 (2022) .......... 55

*Winter v. Natural Resources Defense Council, Inc.*,
555 U.S. 7 (2008) .......... 4, 6, 8, 16,
.......... 17, 26, 27, 60, 61

*Wiseley v. Amazon.com, Inc.*,
709 F. App'x 862 (9th Cir. 2017) .......... 36

*Wolfire Games, LLC v. Valve Corp.*,
No. 21-cv-563, 2021 WL 4952220
(W.D. Wash. Oct. 25, 2021) .......... 10, 43

*Yakima County (West Valley) Fire Protection District No. 12 v. City of Yakima*,
858 P.2d 245 (Wash. 1993) .......... 34, 35

*Zaborowski v. MHN Government Services, Inc.*,
No. 12-cv-5109, 2013 WL 1832638
(N.D. Cal. May 1, 2013) .......... 63

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*Zuver v. Airtouch Communications, Inc.*,
103 P.3d 753 (Wash. 2004) .......... 28, 29, 31, 32, 34

**STATUTES**

Federal Arbitration Act,
9 U.S.C. § 4 .......... 6, 15, 67

9 U.S.C. § 16(b)(4) .......... 7

28 U.S.C. § 1292(a)(1) .......... 7

28 U.S.C. § 1292(b) .......... 1, 7, 18

28 U.S.C. § 1331 .......... 7

28 U.S.C. § 1367 .......... 7

Cal. Civ. Code § 1670.5 .......... 53

**OTHER AUTHORITIES**

Amazon, *What Happens When I Close My Account?*,
https://www.amazon.com/gp/help/customer/
display.html?nodeId=GBDB29JHRPFBDVYV
(last visited Oct. 28, 2026) .......... 40, 41

Apple, *How to delete your Apple Account*,
https://support.apple.com/en-us/102559
(last visited Oct. 28, 2026) .......... 40, 41

## INTRODUCTION

This appeal arises from the denial of a preliminary injunction that Valve Corporation sought to respond to abusive tactics by Respondents' law firm—including conflicting attempts by that firm to pursue a class action in court while simultaneously bringing thousands of individual arbitrations under an arbitration agreement it told a federal court was unenforceable. The district court held that (1) Valve couldn't condition access to licensed recreational software on consent to updates to its terms of service; and (2) the parties couldn't lawfully agree to withdraw their consent to arbitrate their pending disputes. This Court granted 28 U.S.C. § 1292(b) review to address both holdings, which are fundamentally wrong and radically depart from ordinary contract principles. This Court should reverse.

**1.** Respondents are 358 users of Valve's video game platform, Steam. Steam users agree to the Steam Subscriber Agreement, or SSA, and are granted licenses to use the content and services on the platform. Bucher Law PLLC, or Bucher, claims to represent all of the Respondents. The firm's founder signed up a large number of Steam users to bring antitrust claims against Valve in individual arbitrations. As he boasted to prospective

litigation funders, the strategy was to "weaponize[]" an arbitration agreement in the SSA to leverage a settlement from Valve. 2-ER-235.

In 2023, Bucher launched several thousand arbitrations against Valve, including on behalf of Respondents. Bucher invoked the arbitration clause in the SSA then in effect—the Superseded Agreement. Bucher's recruiting practices and lack of diligence resulted in arbitration demands on behalf of numerous claimants with threshold deficiencies, including claimants who are deceased, represented by separate counsel, or entirely unaware of the arbitrations that Bucher had filed in their names.

When Valve refused to capitulate to Bucher's demands for a quick settlement based on threatened arbitration fees, the firm changed tactics. At Bucher's urging, an arbitrator in four arbitrations ruled that the arbitration agreement in the Superseded Agreement was unenforceable. Bucher then filed a putative nationwide class action against Valve raising similar antitrust claims to the ones asserted in arbitration, based on the premise that Valve's arbitration clause was unenforceable as to the entire putative class of all Steam users in the United States, including Respondents. *See* Complaint, *Elliott v. Valve Corp.*, No. 24-cv-1218 (W.D. Wash. Aug. 9, 2024). At the same time, Bucher took the contradictory position that Respondents (along

with other Steam users) were entitled to pursue arbitrations under that same arbitration agreement. Bucher's motivation is unsurprising; as this Court recently recognized, "mass-arbitration tactic[s]" of this sort are "geared more toward racking up procedural costs to the point of forcing … a settlement than proving the allegations [necessary] to seek appropriate redress on the merits." *Jones v. Starz Entertainment, LLC*, 129 F.4th 1176, 1183 (9th Cir. 2025).

In response to those tactics, Valve sought to restore order, to clarify how disputes between Valve and its users would be resolved, and to promote fair and efficient merits resolution of users' claims. It made no sense for Valve to defend against the same claims in both court and arbitration, in overlapping proceedings where the same law firm was taking squarely conflicting positions, for the same clients, about the enforceability of Valve's arbitration agreement. Valve followed the Superseded Agreement's amendment procedures and removed the arbitration clause and class-action waiver from the Subscriber Agreement in September 2024. That updated agreement—referred to as the Current Agreement because subsequent amendments aren't germane here—provides that all claims and disputes between Steam users and Valve, including those that arose before the Current Agreement became effective, must proceed exclusively in court.

**2.** Bucher refused to honor the Current Agreement and proceeded with Respondents' arbitrations. So Valve brought this action in October 2024 seeking a declaration that the Current Agreement binds Respondents and an injunction preventing Respondents' arbitrations from proceeding.

In May 2026—19 months later—the district court denied Valve's preliminary-injunction motion. The court ruled that Valve hadn't satisfied the preliminary injunction factors required under *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 20 (2008).

In determining that Valve wasn't likely to succeed on the merits, the court concluded that the Current Agreement's forum provision is procedurally unconscionable as to Respondents because they would have lost access to the Steam platform until they chose to accept it. 1-ER-30. And the court concluded that the forum provision is substantively unconscionable because it withdrew the parties' consent to arbitrate after Respondents had initiated arbitrations. 1-ER-21. Even though unconscionability must be measured when a contract is formed, not when a court rules on its enforceability, the district court relied heavily on the fact that some arbitrations had progressed substantially during the nearly two years since Valve filed this action. *Id.*

In light of its ruling on the merits, the court made short work of the other factors, holding that Valve wouldn't be irreparably harmed by being forced to arbitrate claims that the parties no longer consented to arbitrate, and that the balance of equities and the public interest didn't warrant enjoining the contractually-unauthorized arbitrations.

**3.** The district court's order rests on fundamental legal errors.

For starters, the Current Agreement's forum provision is neither procedurally nor substantively unconscionable. The way the parties agreed to the updated terms was procedurally fair. Valve provided robust notice of the Current Agreement's terms and specifically flagged the changes to its dispute-resolution provisions. Respondents had ample opportunity to read and understand the Current Agreement's terms, and decide whether to accept them—or, if Respondents preferred, to stop using Steam while their arbitrations remained pending. Valve did not, as the district court believed, have a duty to offer unrestricted access to the Steam platform and the licensed content available on the platform in perpetuity, as the preexisting contractual license terms make clear. Neither the contract nor any background legal principle imposes such a duty. Upholding the district court's

approach would upend modern contracting practices, especially for software and other licensed digital products.

It is also substantively fair for the parties to agree to change the forum for resolving their disputes, including disputes that are already pending, as well-established precedent from this Court and others makes clear. Arbitration is a creature of contract, and parties are free to agree to remove disputes from arbitration. That is why courts routinely reject arguments that contracts that change the parties' dispute-resolution forum after litigation or arbitration has commenced are unenforceable.

Finally, with the district court's merits errors corrected, the remaining *Winter* factors likewise warrant Valve's requested injunction.

The Court should reverse and remand with instructions to enjoin Respondents' pending arbitrations.

## JURISDICTION

The district court had subject matter jurisdiction over Valve's claims. A court assessing jurisdiction over an action seeking to enjoin an arbitration asks whether it would have jurisdiction over the analogous petition to compel arbitration under 9 U.S.C. § 4. *See* 1-ER-21-23 (district court's jurisdictional analysis). That inquiry, in turn, requires asking whether the

court would have jurisdiction over the underlying claims asserted in the arbitrations. *See Vaden v. Discover Bank*, 556 U.S. 49, 62 (2009). Here, the underlying arbitrations involve federal claims under the Sherman Act and state-law claims that arise out of the same Article III case or controversy, so the district court would have federal question and supplemental jurisdiction under 28 U.S.C. §§ 1331 and 1367, meaning it had jurisdiction to consider an action to enjoin arbitration of those claims.

This Court has jurisdiction under 28 U.S.C. § 1292(b). (Valve couldn't appeal the preliminary injunction denial under 28 U.S.C. § 1292(a)(1) because 9 U.S.C. § 16(b)(4) makes an order "refusing to enjoin an arbitration" appealable only under § 1292(b).) The district court certified its order denying Valve's motion for a preliminary injunction for interlocutory appeal under § 1292(b). 1-ER-3-8. Valve timely sought this Court's permission to appeal within 10 days of the district court's certification order. 4-ER-718-19. This Court accepted the appeal. 2-ER-44-45.

## STATEMENT OF THE ISSUES

**1.** Whether Valve has shown a likelihood of success on the merits because the forum provision in the Current Agreement is not unconscionable and unenforceable as applied to Respondents.

**a.** Whether the district court erred in holding that the Current Agreement's forum provision is procedurally unconscionable, because Valve conditioned continued access to licenses to recreational software on acceptance of the company's contractual terms and gave subscribers a meaningful choice about whether to accept those terms after fair notice.

**b.** Whether the district court erred in holding that the Current Agreement's forum provision is substantively unconscionable, because it imposes no limits on Respondents' substantive rights, and well-established precedent makes clear that parties can agree to move pending disputes from one forum to another, including to court, an indisputably fair forum.

**2.** Whether Valve satisfied the remaining *Winter* factors, including the well-established irreparable harm from being forced to arbitrate without consent, and whether the district court erred in concluding otherwise, based largely on its erroneous reasoning on likelihood of success on the merits.

## STATEMENT OF THE CASE

### A. Factual background

#### 1. Valve, Steam, and the Steam Subscriber Agreement.

Valve develops, publishes, and digitally distributes video games. 3-ER-355. Valve offers an online platform called Steam, where consumers can

purchase licenses to play video games and communicate with their friends about video games. *Id.*

To access Steam, users must agree to the SSA. *Id.* All relevant versions of the agreement state that video games and other content and services available on the Steam platform "are licensed, not sold." 2-ER-265, 2-ER-276. The agreement further informs users that "[y]our license confers no title or ownership" and that "you must have a Steam account" to use the licensed content on the Steam platform. *Id*.

Valve also discloses, and each user agrees, that the terms governing users' Steam accounts and use of the Steam platform may change. The parties here agreed that "[t]his Agreement may at any time be mutually amended by your explicit consent to changes proposed by Valve." 2-ER-270. The parties further agreed that Valve could amend the agreement unilaterally for users who choose to continue to use Steam after at least 30 days' notice of the amended terms. *Id.*

From 2012 to September 2024, the SSA contained an arbitration agreement and class-action waiver. 1-ER-11-13.

### 2. Bucher and its founder attempt to "weaponize" the arbitration agreement in the Steam Subscriber Agreement and file a parallel class action.

**a.** The arbitration agreement attracted the attention of Bucher's founder, who singled out Valve in a 2022 presentation to a potential litigation funder as an "[e]xample [t]arget" for a mass-arbitration campaign. 2-ER-239. The campaign would "weaponize[]" Valve's arbitration agreement by filing numerous individual arbitrations and using the associated fees—which Valve subsidized heavily—to "forc[e] a quick settlement." 2-ER-235, 2-ER-238. The presentation emphasized that Valve was an attractive target for a mass-arbitration campaign because Valve's arbitration clause included "favorable arbitration terms," 2-ER-238, and Valve had recently compelled arbitration of the claims of seven consumer plaintiffs in a putative antitrust class action brought by a different firm. 2-ER-239 (discussing *Wolfire Games, LLC v. Valve Corp.*, No. 21-cv-563, 2021 WL 4952220 (W.D. Wash. Oct. 25, 2021)).

**b.** In 2023, Bucher initiated the mass-arbitration scheme. On July 12, 2023, Bucher sent Valve a letter threatening to bring purported antitrust claims in individual arbitrations on behalf of 44,903 consumers unless Valve settled for hundreds of millions of dollars. 2-ER-172-73, 2-ER-217.

When Valve refused to capitulate, Bucher commenced 4,991 arbitrations before the American Arbitration Association (AAA). 2-ER-217. The 358 Respondents here are among the claimants in those arbitrations. 3-ER-346.

**c.** Bucher moved on behalf of four of the claimants to dismiss the arbitrations they had filed, arguing that the arbitration agreement in the Superseded Agreement wasn't enforceable. 2-ER-218. The arbitrator agreed and dismissed the arbitrations on July 8, 2024. *Id.*

**d.** A month later, Bucher filed a putative antitrust class action against Valve, naming as plaintiffs the same four claimants whose arbitrations had just been dismissed. Complaint, *Elliott*, No. 24-cv-1218 (W.D. Wash. Aug. 9, 2024). The complaint asserts claims that Bucher itself has described as "overlapping" with the claims in the mass-arbitration campaign. 2-ER-219. The complaint contends that the Superseded Agreement's arbitration clause is unenforceable as to all Steam users and that a class action is a superior method for resolving their claims, 3-ER-348, and the plaintiffs seek to represent a putative class of all Steam users in the United States, including Respondents and other users pursuing arbitrations, 3-ER-315. The case remains pending.

**e.** Despite the arbitrator's order declaring the arbitration agreement in the Superseded Agreement unenforceable and Bucher's putative class action based on that premise, Bucher persisted with the remaining arbitrations. 3-ER-347. Bucher insisted that the remaining claimants were entitled to arbitrate under the Superseded Agreement despite its simultaneous argument in court that the provision is unenforceable. *Id.*

### 3. Valve removes the arbitration clause and class-action waiver from the Steam Subscriber Agreement.

**a.** Faced with arbitrations under an agreement that was ruled unenforceable and an overlapping putative class action, Valve chose to accept the arbitrator's decision that the arbitration agreement was unenforceable. So on September 26, 2024, Valve replaced the Superseded Agreement with the Current Agreement. 3-ER-348.

The Current Agreement removes the Superseded Agreement's arbitration clause and class-action waiver. The Current Agreement requires all disputes with users to be litigated in federal or state court in King County, Washington, rather than in arbitration. 2-ER-281. The Current Agreement also "constitutes and contains the entire agreement between the parties with

respect to the subject matter hereof and supersedes any prior oral or written agreements." 2-ER-282.

Valve followed the amendment process in the Superseded Agreement and gave Steam users notice of the Current Agreement by e-mail, by pop-up notification in the Steam client, in a blog post, and on the public Steam website. 2-ER-253-59. The notices all specifically highlighted the change to the SSA's dispute-resolution terms. *Id.* For example, both the e-mail and pop-up notices:

- informed users that the updates "include changes to how disputes and claims between you and Valve are resolved";
- directed users to "Section 10" of the new agreement for the updated dispute-resolution terms; and
- explained that the updated dispute-resolution provisions "require all claims and disputes to proceed in court and not in arbitration" and no longer contain a "class action waiver":



Hello

We have updated the Steam Subscriber Agreement

We've updated the Steam Subscriber Agreement. The updates affect your legal rights. They include changes to how disputes and claims between you and Valve are resolved. The updated dispute resolution provisions are in Section 10 and require all claims and disputes to proceed in court and not in arbitration. We've also removed the class action waiver and cost and fee-shifting provisions. Please carefully review the updated Steam Subscriber Agreement here.

2-ER-255 (e-mail notice); *see also* 2-ER-256 (pop-up notice).

**b.** Respondents all accepted the Current Agreement. Most checked a box or clicked a button indicating acceptance of its terms. 2-ER-67-70, 2-ER-181-93, 2-ER-260, 2-ER-283-300. The remaining Respondents continued to use their Steam accounts after the Current Agreement became effective on November 1, 2024—more than 30 days after they received notice that doing so constitutes acceptance of the Current Agreement. 2-ER-260.

**c.** At the time Valve updated the SSA in 2024, Respondents' arbitrations were in their early stages. No arbitration had proceeded to an evidentiary or merits hearing, much less an award. 3-ER-347, 3-ER-518.

**d.** On September 27, 2024, the day after the update, Valve informed Respondents' counsel of the update to the Current Agreement and its updated dispute-resolution terms and offered to reimburse Respondents' (and the other claimants') arbitration filing fees. 2-ER-106-09, 2-ER-249-50. Bucher rejected the offer and instead insisted on proceeding with Respondents' arbitrations. 2-ER-218-21.

## B. Procedural background

### 1. Valve seeks to enjoin Respondents' arbitrations because the parties had withdrawn their consent to arbitrate.

In October 2024, once Bucher made clear it wouldn't honor the Current Agreement's dispute-resolution terms despite its clients' agreement to those terms, Valve brought this action seeking a declaration that the Current Agreement governs and an injunction preventing Respondents from continuing to arbitrate. 3-ER-552. Valve filed a petition under § 4 of the Federal Arbitration Act, 9 U.S.C. § 4, explaining that courts have held that a corollary power to the power to compel arbitration under § 4 is the power to enjoin a pending arbitration. 3-ER-490-91 (citing cases).

On August 1, 2025, the district court ordered Valve to file a complaint instead of a § 4 petition. 3-ER-466-77. On August 21, 2025, Valve filed the

operative complaint and again moved for a preliminary injunction. 3-ER-303-88.

### 2. The district court denies Valve's request for a preliminary injunction.

The district court denied Valve's preliminary injunction motion in May 2026, nearly nineteen months after Valve filed this action. 1-ER-40.

**a.** The court first held that the "ordinary *Winter* standard" for prohibitory injunctions applies—rather than any heightened standard for mandatory injunctions—because Valve seeks to prohibit Respondents from continuing to arbitrate. 1-ER-25.

**b.** The court then turned to likelihood of success on the merits. The court first held that Respondents likely had either affirmatively agreed to the Current Agreement—including its dispute-resolution terms—or accepted it by continuing to use Steam after the contract-review period. 1-ER-26-27. The court also concluded that the plain language of the Current Agreement's forum provision covered Respondents' claims. 1-ER-27. But it held that the forum provision is unenforceable as to Respondents, because, in its view, the provision is procedurally and substantively unconscionable. 1-ER-28-36.

The court concluded that the forum provision in the Current Agreement is procedurally unconscionable because it conditions Respondents' continued access to Steam on accepting the updated terms in the Current Agreement. 1-ER-29-30. Without acknowledging the undisputed record evidence that Valve gave notice of the updated Current Agreement to Respondents' counsel, the court further expressed a concern that Valve had communicated the updated terms directly to Respondents when sending the terms to all Steam users worldwide. 1-ER-31-32.

The district court concluded that the forum provision is substantively unconscionable because it withdrew the parties' consent to arbitration after Respondents had initiated individual arbitrations. 1-ER-32-36. The court relied on the fact that, by the time of its ruling in May 2026—rather than at the time of Valve's update in September 2024—some Respondents had pursued their arbitrations "to the verge of relief." 1-ER-35. The court also noted that, in its view, tolling of the statute of limitations was "unsettled" for "claimants who reach a final merits award in arbitration." 1-ER-34.

**c.** The district court then addressed the remaining *Winter* factors. Much of its reasoning turned on its conclusion that the parties' agreement to resolve their disputes in court rather than in arbitration is unenforceable. 1-

-ER-36-40. The court concluded that Valve wouldn't be irreparably harmed absent a preliminary injunction because Valve would lose only "time and money" from continuing to defend itself in Respondents' arbitrations. 1-ER-37. On the equities, the court stated that the arbitration agreement in the Superseded Agreement permitted the mass-arbitration campaign, without acknowledging the duplicative putative class action Bucher filed on the premise that the same arbitration agreement is unenforceable. 1-ER-37-39. Finally, on the public interest factor, the court reiterated its belief that it was unfair for Valve to change the forum for pending disputes. 1-ER-39-40.

#### 3. The district court certifies its order for interlocutory appeal, and this Court accepts the appeal.

Valve moved to certify the district court's order denying a preliminary injunction for interlocutory appeal under 28 U.S.C. § 1292(b), explaining that the court's unconscionability rulings turned on controlling issues of law that other courts had resolved differently. 1-ER-4. The court granted the motion. 1-ER-8. It explained that "[t]here is no serious dispute about whether the question[s] at issue [are] controlling—plainly, [they are]." 1-ER-5. The court also "agree[d] with Valve that the order presents … novel legal question[s] on which fair-minded jurists might reach contradictory conclusions." 1-ER-

6. The court concluded that an "immediate appeal will advance this" litigation by providing "the answer to the central question" of whether the forum provision in the Current Agreement is enforceable—a threshold question in numerous other cases and proceedings involving Valve. *Id.*

Valve timely sought, and this Court granted, leave to appeal. 2-ER-44-45; 4-ER-718-19.

## SUMMARY OF ARGUMENT

The Court should reverse the district court's denial of Valve's motion for a preliminary injunction.

**I.** The district court erred in ruling that the forum provision in the Current Agreement is unenforceable as applied to Respondents, and thus that Valve hadn't shown it was likely to succeed on the merits. "[A]rbitration is a matter of contract and consent." *Coinbase, Inc. v. Suski*, 602 U.S. 143, 145 (2024). Thus, once the parties validly agreed to resolve their disputes in court, they eliminated their prior consent to arbitrate Respondents' claims. Respondents failed to show that the parties' selection of a judicial forum was either procedurally or substantively unconscionable, so the district court erred as a matter of law in refusing to enforce the parties' agreement.

**A. 1.** The touchstone of procedural unconscionability is whether "impropriety during the process of forming a contract" deprives the contracting party of a "meaningful choice." *Nelson v. McGoldrick*, 896 P.2d 1258, 1262 (Wash. 1995). There was no impropriety here, and Respondents had a meaningful choice to decide whether to accept the Current Agreement.

Valve followed the Superseded Agreement's amendment procedures and gave robust notice of the Current Agreement's terms, including the updates related to dispute resolution. It gave Respondents and other Steam users over 30 days to decide whether to accept the Current Agreement. And the terms of the Current Agreement are clear and not buried in fine print. Those circumstances satisfy all the factors Washington courts have identified in assessing meaningful choice. *See, e.g.*, *Torgerson v. One Lincoln Tower, LLC*, 210 P.3d 318, 322 (Wash. 2009).

**2.** Valve's decision to condition access to licensed software on Steam on consent to the operative license terms didn't deprive users of meaningful choice. Similar license agreements are ubiquitous across the software and video-game industries, and courts routinely enforce the restrictions in those licenses. *See, e.g.*, *Leong v. Square Enix of America Holdings, Inc.*, 462 F. App'x 688, 689 (9th Cir. 2011). Because Valve had no duty to offer

an unrestricted right to play video games in perpetuity, Valve could place conditions on users' continued access to Steam and licensed video games.

In accepting the SSA, Respondents have always agreed that their ongoing ability to use Steam is conditioned on their willingness to abide by the then-current terms of service governing the platform, and that Valve can change those terms on 30 days' notice. So Respondents had a clear and meaningful choice. They could remain active Steam users and continue playing licensed video games subject to the Current Agreement. Or they could discontinue using Steam until they finished arbitrating. Whichever route they chose, they received the benefit of their original bargain: They had the opportunity to play licensed games while they remained active Steam users.

**3.** The district court's reasoning fails. The ruling's key premise—that, to decline the Current Agreement, Steam users had to give up a vested property right in the content they had licensed from Steam—is legally incorrect. Respondents' rights are defined by contract, and the relevant contract—here, the SSA—contradicts the district court's notion that Respondents had a vested right to play video games in perpetuity under a never-changing set of terms.

The district court's departure from ordinary contract principles on free-floating fairness grounds was particularly misguided because video games are just one form of recreational activity consumers can choose from. The district court erroneously minimized Respondents' option to reject the Current Agreement and continue to arbitrate by pausing their use of Steam until their arbitrations are complete. What's more, there was nothing improper—much less procedurally unconscionable—about Valve communicating notice of the updated Current Agreement directly to all Steam users, including Respondents. And the court failed to confront the sweeping implications of its ruling, which threatens to upend modern contracting practices by making it impossible for providers of digital content to update their agreements with existing users—no matter how conspicuously they present those updates.

**B.** The forum provision in the Current Agreement is also not substantively unconscionable.

**1.** An agreement to move all pending disputes from arbitration to court—a fair forum—is not one-sided, much less so excessively one-sided that it is "[s]hocking to the conscience," "monstrously harsh," or "exceedingly calloused," *Nelson*, 896 P.2d at 1262—the standard for declaring a

contract term substantively unconscionable. This Court and others routinely enforce dispute-resolution provisions, like the forum provision here, that apply to preexisting claims. Courts routinely enforce such provisions in updated agreements when there are pending lawsuits or arbitrations at the time of the update. Indeed, courts have made clear that parties can freely agree to "*remove* from arbitration an existing controversy." *Dasher v. RBC Bank (USA)*, 745 F.3d 1111, 1125 (11th Cir. 2014). It isn't conscience-shocking to enter into an agreement that tracks basic principles of contract law and provides for judicial dispute resolution.

**2.** Based on those well-established principles, there was nothing unfair about moving disputes from arbitration to court.

**3.** The district court's core holding—that any contract that would change the forum for a pending dispute is unenforceable—is error under basic contract principles. It finds no support in unconscionability principles or the decisions of numerous courts enforcing such agreements.

The court's other reasoning compounds the error. The court looked to the circumstances at the time it ruled—not, as the law requires, at the time the contract was formed 19 months earlier. At the time of formation, Respondents' arbitrations were in their early stages, underscoring that they

couldn't show any unfairness, much less unfairness rising to the level of substantive unconscionability, from agreeing to resolve their claims in court.

Respondents also lost no substantive rights by agreeing to move from arbitration to court, because Respondents remain free to assert the same antitrust claims in court. The district court wrongly suggested that enforcing the forum provision could cause Respondents' claims to be time-barred. That's wrong because, among other things, they are protected by class-action tolling based on their membership in the putative class in *Elliott*.

Finally, the district court wrongly concluded that the forum provision is unfairly one-sided in practice: It gives both Valve and Respondents a fair judicial forum for resolving disputes. In fact, the practical realities *reinforce* the forum provision's fairness. Faced with an arbitrator's ruling that the SSA's arbitration agreement was unenforceable plus an adversary taking inconsistent positions on two fronts—thousands of arbitrations asserting an arbitration agreement is enforceable and a putative class action claiming just the opposite—Valve rationally updated its terms to call for a judicial forum.

**II.** The district court also erred in concluding that Valve hadn't satisfied the remaining *Winter* factors.

**A.** Valve will suffer irreparable harm if forced to arbitrate claims that Valve and Respondents have agreed aren't subject to arbitration. This Court and others have recognized that forcing a party to arbitrate absent consent inflicts irreparable harm. *See, e.g.*, *Oppenheimer & Co. v. Mitchell*, 135 F.4th 837, 850 (9th Cir. 2025). Courts have also reached similar conclusions in related contexts—for example, that a party suffers irreparable harm when forced to litigate a claim the parties agreed to arbitrate or to litigate in the wrong forum, in violation of a contractual forum-selection clause.

**B.** While Valve would be irreparably harmed absent an injunction, an order requiring Respondents to resolve their disputes with Valve in court wouldn't prejudice Respondents because, on the correct view of the merits, they have agreed to litigate their disputes in court. Respondents lose no substantive rights in court, where they can assert the same claims.

**C.** The public interest in honoring contractual agreements likewise favors a preliminary injunction. In accordance with the merits of the unconscionability question, the public interest in enforcing forum provisions and against forcing a party to arbitrate a dispute that it hasn't agreed to arbitrate supports enjoining Respondents from continuing their arbitrations in violation of the Current Agreement's forum provision.

## STANDARD OF REVIEW

The district court's rulings about the validity of the Current Agreement's terms are legal rulings subject to de novo review. *See Coneff v. AT&T Corp.*, 673 F.3d 1155, 1157 (9th Cir. 2012). Although this Court reviews the denial of a preliminary injunction for an abuse of discretion, a district court necessarily "abuses its discretion in denying a request for a preliminary injunction if it 'bases its decision on an erroneous legal standard or clearly erroneous findings of facts.'" *Independent Living Center of Southern California, Inc. v. Shewry*, 543 F.3d 1050, 1055 (9th Cir. 2008) (alteration adopted). This Court therefore "review[s] the district court's legal rulings de novo," *id.*, because "[a]n error of law necessarily constitutes an abuse of discretion," *Akopyan v. Barnhart*, 296 F.3d 852, 856 (9th Cir. 2002); *accord, e.g.*, *adidas America, Inc. v. Skechers USA, Inc.*, 890 F.3d 747, 753 (9th Cir. 2018).

## ARGUMENT

All four *Winter* factors warrant an order enjoining Respondents' pending arbitrations. A party is entitled to a preliminary injunction when it shows "[1] that [it] is likely to succeed on the merits, [2] that [it] is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in [its] favor, and [4] that an injunction is in the public interest."

*Environmental Protection Information Center v. Carlson*, 968 F.3d 985, 989 (9th Cir. 2020) (quoting *Winter*, 555 U.S. at 20). "Likelihood of success on the merits is a threshold inquiry and is the most important factor." *Id.* (citing *Edge v. City of Everett*, 929 F.3d 657, 663 (9th Cir. 2019)). Here, all four *Winter* factors strongly support Valve's requested injunction, and the district court's contrary conclusion rests on legal error.

## I. Valve is likely to succeed on the merits because the dispute-resolution provisions in the Current Agreement are enforceable.

"[A]rbitration is a matter of contract and consent." *Coinbase*, 602 U.S. at 145; *see also AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 351 (2011) ("Arbitration is a matter of contract."). Under the forum provision in the Current Agreement, Valve and Respondents agreed to resolve their disputes in court rather than in arbitration. That means that the parties withdrew their prior consent to arbitrate Respondents' claims. Accordingly, Respondents cannot continue pursuing their arbitrations.

The district court didn't dispute that Respondents assented to the Current Agreement and that its forum provision governs Respondents' claims. 1-ER-26-27. The central question is thus whether the Current Agreement's dispute-resolution provisions are enforceable.

They are. Respondents had "the burden of showing that the agreement is not enforceable." *Zuver v. Airtouch Communications, Inc.*, 103 P.3d 753, 759 (Wash. 2004). They didn't meet it. And they can't, because the forum provision is neither procedurally nor substantively unconscionable.

The district court erred as a matter of law in holding otherwise. This Court regularly reverses orders denying preliminary injunctions when the district court errs in assessing the merits. *See, e.g.*, *Northwest Association of Independent Schools v. Labrador*, 166 F.4th 1148, 1156-64 (9th Cir. 2026); *Hubbard v. City of San Diego*, 139 F.4th 843, 849-54 (9th Cir. 2025); *Environmental Protection Information Center*, 968 F.3d at 989-92; *BOKF, NA v. Estes*, 923 F.3d 558, 561-62 (9th Cir. 2019); *Nationwide Biweekly Administration, Inc. v. Owen*, 873 F.3d 716, 737-38 (9th Cir. 2017). The Court should do the same here.

### A. The Current Agreement is procedurally fair because Respondents had a meaningful choice about whether to accept the Current Agreement's terms.

An agreement is procedurally unconscionable only when one party exploits superior bargaining leverage to deprive the other party of a "meaningful choice" over whether to accept the contract. *Zuver*, 103 P.3d at 760-61. "Washington courts have long held that the fact that unequal bargaining power exists will not, standing alone, justify a finding of procedural

unconscionability." *Id.* at 761 (collecting cases). Instead, procedural unconscionability turns on "impropriety during the process of forming a contract," *Nelson*, 896 P.2d at 1262, such as "blatant unfairness in the bargaining process," *Torgerson*, 210 P.3d at 322.

Respondents didn't (and couldn't) establish procedural unconscionability. That's because there was no "impropriety" or "blatant unfairness" in the way Valve presented and Respondents accepted the Current Agreement. To the contrary, Respondents had a meaningful choice in deciding whether to accept the Current Agreement—in particular, they had robust notice of clear terms, and they could decide whether to continue using conditionally licensed software based on whether they agreed with the terms. The district court's contrary conclusion rests on a basic misunderstanding of property and license rights that would disrupt ubiquitous and lawful modern contract and digital licensing.

**1. Valve's presentation of the Current Agreement comports with all the factors Washington courts use to assess meaningful choice.**

Courts evaluating procedural unconscionability under Washington law focus on three factors: "(1) the manner in which the parties entered into the contract, (2) whether the parties had a reasonable opportunity to

understand the terms, and (3) whether the terms were 'hidden in a maze of fine print.'" *Torgerson*, 210 P.3d at 322; *accord*, *e.g.*, *Satomi Owners Association v. Satomi, LLC*, 225 P.3d 213, 232 (Wash. 2009). All those factors show there was no procedural unconscionability here.

**Manner of contract formation.** The district court acknowledged that Valve communicated the Current Agreement using "conventional clickwrap mechanisms" that provided "conspicuous[]" notice and required clear assent. 1-ER-27. As explained above (at 13-14), Valve notified Respondents of the update by e-mail and pop-up notices, along with postings on public websites. 2-ER-253-59. Most Respondents affirmatively accepted the Current Agreement by clicking a button or checking a box near a link to the Current Agreement's full text. 2-ER-67-70, 2-ER-181-93, 2-ER-260-61, 2-ER-283-300. The rest continued using Steam after the 30-day contract-review period ended and after being clearly informed that continued use of Steam constitutes assent. 2-ER-260-61.

**Reasonable opportunity to understand the terms.** Respondents had a reasonable opportunity to understand the Current Agreement's terms. The notifications they received placed the changed dispute-resolution terms

front and center. The notices linked to the Current Agreement's full text and specifically informed Respondents that the updated terms:

- "include changes to how disputes and claims between you and Valve are resolved";
- "require all claims and disputes to proceed in court and not in arbitration" and no longer contain a "class action waiver"; and
- contain the new dispute-resolution terms in "Section 10" of the agreement.

2-ER-254, 2-ER-256.

Respondents who affirmatively accepted the Current Agreement received a link to the Current Agreement before acceptance and had the opportunity to review its terms before deciding how to proceed. 2-ER-256-59. And Respondents who accepted the Current Agreement by continuing to use Steam had at least 30 days after receiving notice to review the agreement (which was also readily available online) and decide whether they wanted to discontinue use of their Steam accounts. 2-ER-255.

Under either scenario, Respondents had ample time to review the agreement before accepting it. The Washington Supreme Court has held that 15 days provided a party "ample opportunity" to review an agreement and even "contact counsel" about "any concerns or questions she might have had

about the terms of the agreement." *Zuver*, 103 P.3d at 761. The same is true of a review period twice as long. And Respondents haven't shown Valve "placed undue pressure on [them] to sign the agreement without providing [them] with a reasonable opportunity to consider its terms." *Id.* Nor have they shown that "the terms of the agreement were set forth in such a way that an average person could not understand them." *Id.*

**The terms weren't hidden in fine print.** Far from hiding them, Valve featured the changes to the dispute-resolution provisions in the Current Agreement in its notifications to Respondents and other Steam users. 2-ER-255-56. The contract itself is easily legible and the forum provision and other dispute-resolution terms appear "in the same size font as other key provisions and [are] set off in" a separate section. *Torgerson*, 210 P.3d at 323; *see also, e.g.*, *Tjart v. Smith Barney, Inc.*, 28 P.3d 823, 830 (Wash. Ct. App. 2001) ("the arbitration provision was obvious in the fairly short contract"); *Nelson*, 896 P.2d at 1264 ("The agreement is short, not especially complex, and contains no hidden terms in fine print.").

### 2. Conditioning a benefit—as opposed to compliance with a preexisting legal duty—on acceptance of terms doesn't make an agreement procedurally unconscionable.

Where, as here, the party opposing enforcement of a contract term hasn't shown the three factors discussed above are present, courts have held the term isn't procedurally unconscionable. That's because conditioning an agreement to provide a benefit on acceptance of terms isn't procedurally unconscionable unless a party already has a duty to provide that benefit. That rule applies no differently to software licensing, the context relevant here, and courts routinely enforce software-license terms and restrictions. Those principles make clear that the Current Agreement's dispute-resolution terms aren't procedurally unconscionable. Steam users contractually agreed in the SSA that they were licensing, not purchasing outright, software that they could use so long as they accepted the platform's terms, which Valve could change on 30 days' notice.

#### a. Courts recognize that a party's conditioning an agreement to provide a benefit on acceptance of terms isn't procedurally unconscionable unless the party already has a duty to provide the benefit.

Well-established caselaw makes clear an agreement isn't procedurally unconscionable when it provides a benefit in exchange for acceptance of

terms, so long as there is no preexisting duty to provide that benefit. That remains true even when the agreement conditions the benefit in which a party has an economic interest—even a substantial one—on acceptance of terms and there is no option to reject the terms. *See, e.g.*, *Satomi Owners Association*, 225 P.3d at 232 (condo purchase conditioned on accepting warranty addendum); *Zuver*, 103 P.3d at 760 (employment conditioned on accepting arbitration agreement); *Romney v. Franciscan Medical Group*, 349 P.3d 32, 37-38 (Wash. Ct. App. 2015) (same; "as in other cases of employment, the employees could choose employment elsewhere" if they didn't agree to the terms of employment).

In *Tjart*, for example, a stockbroker whose employer was acquired by another company had to accept an arbitration agreement to keep her job. 28 P.3d at 825. The court held the agreement wasn't procedurally unconscionable because the employee had a reasonable opportunity to understand its terms before deciding whether to accept it. *Id.* at 830.

Or consider *Yakima County (West Valley) Fire Protection District No. 12 v. City of Yakima*, 858 P.2d 245, 247-48 (Wash. 1993). Landowners living outside the City of Yakima's borders signed a contract allowing them to receive sewer service from the City. *Id.* The contract conditioned sewer service on

the landowners' agreement to incorporate their property into the City once the City limits reached their property. *Id.* That condition didn't make the agreement procedurally unconscionable, the Washington Supreme Court explained, because "the City did not have a duty to provide service" outside of its borders in the first place. *Id.* at 257. The court further held that, under the three factors discussed above (at 29-32), the agreement wasn't procedurally unconscionable because the landowners "were not deprived of the opportunity to understand the contents of the" utility agreement that they signed when they purchased their property. *Id.*

**b. Conditioning continued access to licensed software on acceptance of the operative license terms isn't procedurally unconscionable.**

These same principles apply in the software context. As this Court has recognized, software license agreements are "ubiquitous" and "license agreements, rather than sales, have become the predominate form of the transfer of rights to use copyrighted software material." *Adobe Systems Inc. v. Christenson*, 809 F.3d 1071, 1078 (9th Cir. 2015); *see, e.g.*, *Vernor v. Autodesk, Inc.*, 621 F.3d 1102, 1104, 1111-12 (9th Cir. 2010) (discussing software license conditions, including use restrictions and potential termination); *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1449-52 (7th Cir. 1996) (enforcing licenses

restricting use of software database sold on CD-ROMs). Unlike other goods, software products aren't sold outright, so users don't own or have unconditional rights to use them.

Indeed, license terms with restrictions are standard across the software and video game industries and are routinely enforced. This Court has specifically enforced a company's agreement to license video games subject to conditions, including potential termination of the license. *Leong*, 462 F. App'x at 689.

In *Leong*, the plaintiffs purchased a license to play an online video game, and the user agreement made clear that they didn't own any of the software, game data, or characters. *Leong v. Square Enix of America Holdings, Inc.*, No. 09-cv-4484, 2010 WL 1641364, at *6 (C.D. Cal. Apr. 20, 2010), *aff'd*, 462 F. App'x 688. The district court rejected the plaintiffs' claims that the agreement's terms permitting the developer to cancel or revoke a user's license were procedurally and substantively unconscionable under California law, *id.*, which is "substantially similar" to Washington's unconscionability law, *see Wiseley v. Amazon.com, Inc.*, 709 F. App'x 862, 863 (9th Cir. 2017).

This Court affirmed, explaining that the plaintiffs' "allegations are insufficient to show that they forfeited any property or money" when their

accounts were terminated: "the game's user agreement, which each user must accept prior to playing the game, states that users do not own the game software or data." *Leong*, 462 F. App'x at 689.

#### c. The Current Agreement's dispute-resolution provisions aren't procedurally unconscionable because Respondents received the benefit of the bargain they struck.

The Current Agreement's dispute-resolution provisions aren't procedurally unconscionable because Respondents agreed that their right to use Steam and licensed games was always conditioned on their acceptance of the terms of service governing the platform. The Superseded Agreement made that clear, and also made clear that the terms could change. 2-ER-265, 2-ER-270.

The license Valve grants in the SSA works the same way as licenses for other software. Steam allows users to license the opportunity to play games that are (mostly) developed and owned by third-party publishers. Users don't "buy" the video games they play and don't own the games in their Steam library—"[t]he Content and Services are licensed, not sold." 2-ER-265, 2-ER-276. As both the Superseded Agreement and the Current Agreement make clear, a Steam user doesn't purchase "title or ownership" of a video

game for all time. Rather, he purchases licenses to play games on the Steam platform subject to certain conditions, including acceptance of the terms governing use of the Steam platform. *Id.*

Under those agreed-upon terms, Respondents could play the games they had licensed so long as they chose to remain active Steam users. That included the period of time before Valve introduced the Current Agreement. It included the notice period (a minimum of 30 days, under the SSA) before users had to choose whether to accept the Current Agreement. 2-ER-270. And, if users accepted the Current Agreement and its change to the forum for resolving disputes—a change that was substantively fair (*see infra* pp. 48-52)—they could continue to play their licensed games longer still.

In all cases, Respondents got the benefit of the deal they initially agreed to and paid for under the Superseded Agreement—an opportunity to play the licensed games under the operative terms at least as long as those terms remained in effect, including for a 30-day notice period. And if Respondents preferred participating in Bucher's mass-arbitration campaign, they could have done so by suspending their use of Steam until their arbitration was complete. 2-ER-270. Some claimants made just that choice (2-ER-153-54, 2-ER-206), underscoring that the choice was a meaningful one.

Because Valve did not have a duty—under the contract or otherwise—to provide unconditional access to the Steam platform and licensed video games, it was not unconscionable for Valve to condition continued access on accepting the Current Agreement's terms.

#### 3. The district court's reasoning lacks merit.

The district court's reasons for concluding that the Current Agreement is procedurally unconscionable are meritless.

##### a. Steam users didn't forfeit any vested property right if they didn't accept the Current Agreement.

The district court's core premise was that Steam users had to give up vested property rights in their Steam libraries they had paid for if they didn't accept the Current Agreement. That was error. The rights to access and use licensed software are dictated by the terms of the license agreement. Steam users who purchase video game licenses don't have an unrestricted right to play those games for all time, but rather a right to use the software on acceptance of the operative terms, which they agreed could change on 30 days' notice. It thus wasn't procedurally unconscionable for Valve to ask users to accept the Current Agreement to continue their licenses. *Supra* pp. 33-39.

**b. The district court's approach of ignoring the contractual limitations on license terms would undermine modern contracting and digital licensing more broadly, all to ensure unrestricted, extracontractual access to leisure activities.**

***i.*** Valve's conditioning continuation of software use licenses on acceptance of terms accords with mainstream electronic commerce. The district court's ruling, in contrast, threatens that ubiquitous model.

Providers of online platforms or services routinely condition access on maintaining an active account and accepting the operative contract terms. Those terms—whether pricing terms, privacy policies, or, as here, dispute-resolution provisions—will inevitably change over time. That is true for all manner of digital content licenses for purchase—whether video games, videos, books, music, or more. *See, e.g.*, Amazon, *What Happens When I Close My Account?*, https://www.amazon.com/gp/help/customer/display.html?nodeId=GBDB29JHRPFBDVYV (last visited Oct. 28, 2026) (closing an Amazon account means "all products and services accessed through your account will no longer be available to you," including purchased videos, music, and books); Apple, *How to delete your Apple Account*, https://support.apple.com/en-us/102559 (last visited Oct. 28, 2026) (deleting an Apple account results

in loss of access to "purchased items" protected by digital rights management).

In the district court's view, companies cannot update their agreements with existing users, because it would be unconscionably coercive to condition continued access to digital content on updated contract terms—even, apparently, if the users agreed in advance (as here) that they were purchasing a license to access the digital content only so long as they continued to accept operative platform terms, which are subject to change after notice. That is not—and cannot be—the law. This Court shouldn't endorse an approach to unconscionability doctrine that upends electronic commerce and ordinary contract and licensing practices.

***ii.*** That approach and its consequences are particularly unjustified in this context, because video games are leisure activities. Courts have adhered to basic contract principles and rejected procedural unconscionability challenges involving much higher stakes, like home purchases and employment. *Supra* pp. 33-35. Contracts for "recreational activit[ies]" are even less likely to be procedurally unconscionable because consumers don't need leisure products—"the consumer always has the option of simply forgoing the

activity" and consuming another entertainment product. *Belton v. Comcast Cable Holdings, LLC*, 60 Cal. Rptr. 3d 631, 650 (Ct. App. 2007).

Thus, for example, the Washington Court of Appeals rejected an argument that a health club membership agreement was a procedurally unconscionable contract of adhesion because "a health club is not essential." *DeAsis v. YMCA of Yakima*, 183 Wash. App. 1018, 2014 WL 4376038, at *5-6 (Sept. 4, 2014) (unpublished). Similarly, before her elevation to this Court, Judge Koh held that iPhone gaming "apps such as 'Angry Birds' or 'Plants versus Zombies' are nonessential recreational activities," creating "difficulties" for challenging Apple's terms "both with respect to the procedural and substantive element of unconscionability." *In re iPhone Application Litigation*, No. 11-md-2250, 2011 WL 4403963, at *8 (N.D. Cal. Sept. 20, 2011); *see, e.g.*, *Bassett v. Electronic Arts Inc.*, No. 13-cv-4208, 2015 WL 1298644, at *11 (E.D.N.Y. Feb. 9, 2015), *report and recommendation adopted*, 93 F. Supp. 3d 95 (following *iPhone* in video game context).

In short, the district court provided no reason to depart from basic contract and unconscionability principles to prioritize access to video games. The caselaw confirms there isn't one.

#### c. Respondents could have stopped using Steam while arbitrating.

The district court gave two reasons why it downplayed the option for Respondents to reject the Current Agreement, so they could continue to arbitrate, by discontinuing use of Steam while arbitrating. Both are wrong.

*First*, the court thought it was ambiguous whether discontinuing use of Steam was sufficient to reject the Current Agreement, or whether users had to delete their Steam accounts altogether. 1-ER-29. But the agreement clearly informs users that "[i]f you don't agree to the amendments or to any of the terms in this Agreement, your only remedy is to cancel your Account *or to cease use of the affected Subscription(s)*." 2-ER-270 (emphasis added); *see also* 2-ER-255-56 (similar language in e-mail and pop-up notices).

*Second*, the court thought that the experience of one claimant (Ryan Lally) who elected to stop using Steam to remain in arbitration didn't count because Lally was "a named plaintiff" in the original *Wolfire* action and thus was somehow more "informed" about his options. 1-ER-30. That makes no sense. Bucher claimed to represent all Respondents here at the time of the update to the Current Agreement, 3-ER-497, 3-ER-502, and all the factors discussed above (at 29-32) show Respondents had a meaningful choice. But

none of that should matter anyway. If the court's point was that a consumer cannot be expected to read and be responsible for prominent contract terms without a lawyer reading over his shoulder, its reasoning cannot be reconciled with fundamental contract law.

#### d. Valve could communicate contract terms directly to Steam users worldwide in the ordinary course of business.

Finally, the district court thought there was heightened procedural unfairness because Valve communicated the updates in the Current Agreement directly to all Steam users worldwide, including to users represented in pending lawsuits or arbitrations. 1-ER-31-32. That is wrong twice over.

*First*, while Valve wasn't required to communicate with Respondents' counsel about the update, it is undisputed that Valve did so the very next day (and offered to refund Respondents' arbitration filing fees). 2-ER-249-50. Valve's prompt notification gave counsel ample opportunity to confer with Respondents about the Current Agreement and whether to accept its terms. The district court simply ignored those points, even though they distinguish this case from those the district court cited (1-ER-31), where no such communication with counsel occurred. *See, e.g.*, *Dasher v. RBC Bank (USA)*, 882 F.3d 1017, 1024 (11th Cir. 2018) (expressing concern about bank's failure

"to communicate the proposed amendments to known litigation counsel" for plaintiff); *Russell v. Citigroup, Inc.*, 748 F.3d 677, 680 (6th Cir. 2014) (similar).

What's more, neither *Dasher* nor *Russell* has anything to do with unconscionability. In *Dasher*, the court deemed a consumer's "silence" too "equivocal" to demonstrate assent to proposed amended terms. 882 F.3d at 1023. But here, as the district court recognized, Valve established Respondents' assent to the Current Agreement—indeed, most Respondents affirmatively clicked to accept the terms. 2-ER-260-61, 2-ER-283-300; *supra* p. 14. And in *Russell*, the court held that a modified forum provision in an amended agreement didn't apply retroactively because the text of the agreement didn't support retroactive application. Here, the forum provision in the Current Agreement unambiguously applies to pending claims. *Supra* pp. 13-14.

*Second*, and more fundamentally, it was entirely appropriate for Valve to communicate updated contracts to Steam users in the ordinary course of business.

As now–Second Circuit Judge Nathan has explained, large companies "may face a number of lawsuits at any given time," and it would be

"unworkable in practice" to force companies to carve out represented users from systemwide communications presenting widespread updates to user agreements in the ordinary course of business. *Haider v. Lyft, Inc.*, No. 20-cv-2997, 2021 WL 3475621, at *3 (S.D.N.Y. Aug. 6, 2021). Companies would have to track every single person with a pending proceeding and either (1) seek consent to routine contract modifications from every individual's lawyers; or (2) discontinue ongoing relationships with all of those individuals to avoid the risk of perceived improper communications—something most of those individuals would presumably find undesirable. For that reason, the court rejected "the proposition that an amendment to a company's terms of service may constitute a prohibited communication with a represented party," including because barring such communications "would essentially freeze" businesses' contracts in place. *Id.*; *cf. SCPS LLC v. Kind Law*, No. 25-cv-3255, 2026 WL 96898, at *9 (C.D. Cal. Jan. 8, 2026) (rejecting claim that businesses went "around counsel's back" to obtain assent to an updated agreement). Other courts likewise find "no indication" of "improper conduct" in regular updates to terms of service that reach represented parties. *Miracle-Pond v. Shutterfly, Inc.*, No. 19-cv-4722, 2020 WL 2513099, at *9 (N.D. Ill. May 15, 2020). And courts regularly enforce post-litigation or post-

arbitration modifications to existing contractual terms. *Infra* pp. 48-52. The district court's implication that all of those cases are wrongly decided is unfounded.

### B. The dispute-resolution provisions in the Current Agreement are substantively fair.

Substantive unconscionability is a demanding standard. A contract term is substantively unconscionable only if it is so excessively one-sided that it is "[s]hocking to the conscience," "monstrously harsh," or "exceedingly calloused." *Nelson*, 896 P.2d at 1262 (quoting *Montgomery Ward & Co. v. Annuity Board of Southern Baptist Convention*, 556 P.2d 552, 555 (Wash. Ct. App. 1976)); *accord, e.g.*, *M.A. Mortenson Co. v. Timberline Software Corp.*, 998 P.2d 305, 314 (Wash. 2000). Satisfying that standard requires more than showing "a bad bargain" or "hardships" from the contract's enforcement. *Montgomery Ward*, 556 P.2d at 555. Rather, a contract term is substantively unconscionable only when, if it were enforced, "no decent, fairminded person would view the ensuing result without being possessed of a profound sense of injustice." *Id.*

The district court's substantive unconscionability ruling cannot stand. Valve and Respondents agreed to trade one forum for resolving their

disputes (arbitration) for another fair forum (court). That change is hardly "monstrously harsh" or "exceedingly calloused." *Nelson*, 896 P.2d at 1262.

#### 1. An agreement to resolve pending disputes in another forum is not substantively unconscionable.

An agreement to resolve a pending dispute in another forum isn't substantively unconscionable unless that agreement somehow unduly abridges a party's substantive rights. To the contrary, courts routinely enforce retroactive dispute-resolution provisions.

##### a. Parties can agree to dispute-resolution procedures that apply retroactively to pending claims.

Courts routinely enforce retroactive dispute-resolution provisions. For example, this Court enforced an agreement covering "claims that arose before Customer or Advertiser first accepted any version of these Terms." *Trudeau v. Google LLC*, 816 F. App'x 68, 70 (9th Cir. 2020). The Court rejected as "meritless" the argument that the agreement might not cover preexisting claims. *Id.* Similarly, the Court concluded that an arbitration agreement in an employment agreement covered pre-hire claims "that had accrued prior to the effective date of the arbitration agreement." *Sanfilippo v. Match Group LLC*, No. 20-55819, 2021 WL 4440337, at *2 (9th Cir. Sept. 28, 2021).

A pending lawsuit doesn't change the result. To the contrary, as one court put it in enforcing an arbitration agreement a plaintiff had accepted after suing, "[t]he Ninth Circuit consistently upholds the enforceability of the retroactivity of arbitration clauses." *Saucedo v. Experian Information Solutions, Inc.*, No. 22-cv-1584, 2023 WL 4708015, at *6 (E.D. Cal. July 24, 2023) (citing decisions).

The Court is in good company:

- In *Concepcion*, AT&T sent the controlling arbitration provisions as an update during the litigation. 563 U.S. at 336-37 (litigation filed in March 2006 governed by "revised" arbitration terms dated December 2006).

- The Second Circuit has held that a plaintiff was bound under Washington law to arbitrate his claims under an arbitration clause that he agreed to when making post-litigation purchases. *Nicosia v. Amazon.com, Inc.*, 815 F. App'x 612, 614 (2d Cir. 2020).

- Other courts similarly hold that post-litigation assent to updated terms means those terms apply to pending claims. *See, e.g.*, *Vargison v. Paula's Choice, LLC*, No. 24-cv-342, 2025 WL 346197, at *2 (W.D. Wash. Jan. 30, 2025) (applying *Nicosia*); *In re Ring LLC Privacy Litigation*, No. 19-cv-10899, 2021 WL 2621197, at *7 (C.D. Cal. June 24, 2021) (similar).

- Another court transferred a lawsuit when the plaintiff assented to an arbitration agreement containing a forum-selection clause after filing the lawsuit; the transferee court in Florida then compelled arbitration. *See Newhall v. Chase Home Finance LLC,* No. 10-cv-2749, 2010 WL 4387517, at *2, *6 (D.N.J. Oct. 28, 2010); *Newhall*

*v. Chase Home Finance LLC*, No. 10-cv-2624, 2010 WL 8759340, at *2 (M.D. Fla. Dec. 22, 2010).

- A court concluded that the post-litigation addition of a class-action waiver precluded the plaintiff from pursuing a class action. *Goetsch v. Shell Oil Co.*, 197 F.R.D. 574, 575-78 (W.D.N.C. 2000).

**b. Parties can agree to remove a pending dispute from arbitration or change the arbitral forum.**

The decisions discussed above involve the application of updated dispute-resolution agreements to pending litigation. Unsurprisingly, the same principles apply to updated agreements that remove an arbitration clause or somehow change the arbitral forum for preexisting claims, and numerous decisions uphold those sorts of agreements. That makes sense, because "[a]rbitration is a matter of contract and consent," and when parties have executed multiple contracts, "a court needs to decide what the parties have agreed to—*i.e.*, which contract controls." *Coinbase*, 602 U.S. at 145. When new contracts cover disputes, courts enforce them. For example:

- One district court required claimants to arbitrate before a different arbitration provider based on assent to an updated agreement. *SCPS*, 2026 WL 96898, at *9-10. That result would be the same no matter whether they had already initiated arbitration, because the "Ninth Circuit consistently upholds the enforceability of the retroactivity of arbitration clauses." *Id.* (quoting *Saucedo*, 2023 WL 4708015, at *6).

- This Court recently enforced an updated agreement that changed the arbitral forum for the plaintiffs' pending claims from AAA to JAMS. *See Ireland-Gordy v. Tile, Inc.*, No. 25-403, 2026 WL 594859, at *1-5 (9th Cir. Mar. 3, 2026). Similarly, a district court in this Circuit recently enforced an updated arbitration agreement that changed the arbitral forum for preexisting disputes from AAA to JAMS. *Majidi-Ahy v. Classpass, Inc.*, No. 25-cv-5003, 2026 WL 585465, at *8 (C.D. Cal. Feb. 11, 2026).

- The Eleventh Circuit enforced a post-litigation update that removed a contract's arbitration clause, rejecting the argument that it is impermissible to "*remove* from arbitration an existing controversy." *Dasher*, 745 F.3d at 1125. The principle that "arbitration is simply a matter of contract" means that "courts should simply enforce the parties' agreements, whether that means adding a retroactively applicable arbitration provision *or* removing it." *Id.* (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)).

- When parties voluntarily submit a dispute to an arbitrator, the arbitrator has authority to decide the dispute "without regard to whether the parties had a prior legal obligation to submit the dispute." *Nghiem v. NEC Electronic, Inc.*, 25 F.3d 1437, 1440 (9th Cir. 1994) (quoting *Piggly Wiggly Operators' Warehouse, Inc. v. Piggly Wiggly Operators' Warehouse Independent Truck Drivers Union, Local No. 1*, 611 F.2d 580, 584 (5th Cir. 1980)). That's because "the initial contract to arbitrate may be modified by the" parties' submission of additional disputes, which creates a new agreement that "defines the limits of the arbitrator's authority." *Piggly Wiggly*, 611 F.2d at 584.

Put simply, decision after decision makes clear that whether to arbitrate remains a basic contract-law question of consent, and that principle

works no differently when parties agree to change the forum after a dispute arises or even after arbitration or litigation begins.

#### 2. Valve and Respondents validly retroactively agreed to litigate disputes in court, and that agreement isn't substantively unconscionable.

The Current Agreement isn't substantively unconscionable. Valve and Respondents agreed to substitute judicial resolution (an indisputably fair process) for arbitration and to expressly apply the provision retroactively to preexisting claims. The Current Agreement provides that "all disputes and claims" must "be commenced and maintained exclusively" in court, including "any dispute or claim that arose *before* the existence of this or any prior agreement." 2-ER-281 (emphasis added). The Current Agreement also removed the class-action waiver. 3-ER-311. And the Current Agreement "supersedes any prior oral or written agreements," including those prior agreements' dispute-resolution provisions. 2-ER-282; *see also* 1-ER-27 (the district court's recognition that the forum provision in the Current Agreement covers "the pending arbitrations"). As the caselaw discussed above (at 48-52) makes clear, there is nothing wrong with that retroactive change by consent.

### 3. The district court's substantive unconscionability ruling rests on legal error.

The core premise of the district court's substantive unconscionability holding is that any contract that would change the forum for a pending dispute is unenforceable. 1-ER-32-34. That premise is wrong for the reasons just discussed (at 48-52). And the court's additional justifications only compound its error.

#### a. The district court erred in basing its ruling on the state of the arbitrations at the time of its ruling, rather than at the time the contract was formed.

Unconscionability is measured "at the time the contract was formed." *M.A. Mortenson*, 998 P.2d at 315; *see also*, *e.g.*, Cal. Civ. Code § 1670.5 (same). But throughout its order, the district court referred to the status of the arbitrations at the time of oral argument or its ruling on the contract's enforceability (May 2026), rather than when Valve updated the agreement around nineteen months earlier (September 2024), or when Respondents agreed to it shortly thereafter. For example, the court expressed concern that it would be unfair to switch forums after some Respondents had pursued claims "to the verge of relief" or "to the brink of judgment or past it." 1-ER-

33-35. The court didn't acknowledge that Respondents' arbitrations were still in their nascent stages when Valve updated its terms. *Supra* p. 14.

That was a clear legal error, and it infected the entire ruling. Respondents couldn't point to any unfairness from pursuing their claims in court at the relevant time—in September or October 2024. And regardless—though the district court didn't acknowledge it—Respondents wouldn't have been out of pocket for *any* arbitration fees as a result of the change, because Valve offered to fully refund Respondents' arbitration fees. 2-ER-250; *supra* p. 15.

**b. The district court erred in concluding that Respondents would lose any substantive rights under the Current Agreement's updated terms.**

The district court also thought that the Current Agreement is substantively unconscionable because it affects Respondents' substantive rights. That, too, was error.

***i.*** Courts are most likely to deem contract terms substantively unconscionable when they unduly abridge a party's substantive rights. *See, e.g.*, *Tadych v. Noble Ridge Construction, Inc.*, 519 P.3d 199, 202-03 (Wash. 2022) (one-year contractual limitation for claims subject to a six-year statute of limitations); *Burnett v. Pagliacci Pizza, Inc.*, 470 P.3d 486, 496 (Wash. 2020) (provisions that effectively barred claims by former employees and

shortened the limitations period for current employees); *Adler v. Fred Lind Manor*, 103 P.3d 773, 786-88 (Wash. 2004) (provisions prohibiting recovery of attorneys' fees and limiting the time to bring discrimination claims). But forum-choice terms don't, without more, abridge substantive rights. As the Supreme Court has long recognized, "an arbitration agreement is 'a specialized kind of forum-selection clause'"—it "thus does not alter or abridge substantive rights; it merely changes how those rights will be processed." *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 653 (2022) (quoting *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974)); *see also, e.g.*, *Nghiem*, 25 F.3d at 1441-42 (both courts and arbitrators can decide antitrust claims).

The same is true of the Current Agreement, which merely moves claims in the other direction, from arbitration to court. Respondents are free to assert the same underlying antitrust claims they are currently pursuing in arbitration in court instead.

***ii.*** In concluding otherwise, the district court asserted that the provision "threatens to extinguish accrued claims" as time-barred, because the court thought Valve's position was that "claimants who reach a final merits award in arbitration" don't get the benefit of tolling. 1-ER-34. The district court was wrong, in addition to its failure to understand that no Respondent

has a final merits award in arbitration anyway, because Valve isn't seeking to enjoin arbitrations that have already completed. *E.g.*, 2-ER-71-90 (dismissing claimants who completed arbitration).

It is undisputed that Respondents' individual claims are tolled by the filing of the *Elliott* putative class action, because Respondents are all members of that putative class. *See American Pipe & Construction Co. v. Utah*, 414 U.S. 538, 550-52 (1974). Valve made that clear to the district court. When asked by the court whether "people that have filed arbitrations" are "somehow time barred," counsel for Valve responded, "[a]bsolutely not," 2-ER-176—and Valve has made clear that *American Pipe* tolling applies to all absent members of the putative class in *Elliott*, including individuals whose final arbitration awards are vacated. *See* 2-ER-131; 3-ER-331. But the district court inexplicably failed to recognize *American Pipe* tolling here, despite those representations and even though it recently recognized the availability of *American Pipe* tolling for a different set of claimants with pending arbitrations against Valve, *Smith v. Valve Corp.*, No. 25-cv-1478, 2026 WL 2932023, at *6 (W.D. Wash. Sept. 30, 2026).

### c. The district court erred in concluding that the forum provision is unfairly one-sided.

***i.*** The district court acknowledged that the forum provision in the Current Agreement applies mutually to both Valve and Respondents and requires both parties to resolve disputes in court. 1-ER-33-34. Yet the district court dismissed the text of the provision as mere "facial symmetry" because, in its view, access to a judicial forum is "worthless" for Respondents because they had previously commenced arbitrations. 1-ER-34-35. That reasoning merely restates the district court's incorrect view that parties cannot change the forum for pending disputes. *Supra* pp. 48-52. And the district court's concern about undoing an arbitration that had proceeded "to the verge of relief" (1-ER-35) again underscores its error in evaluating unconscionability based on the circumstances at the time of its ruling rather than the time the contract was formed. *Supra* pp. 53-54.

***ii.*** The district court's view that changing forums would be a setback for Respondents also incorrectly assumes Respondents would fare worse in court than in arbitration. But there is no evidence—and Respondents offered none—to substantiate that assumption. To the contrary, Valve has prevailed in the overwhelming majority of the arbitrations filed by

Bucher (134 out of the 164 that have proceeded to a final award, not to mention the many arbitrations Bucher voluntarily dismissed). 2-ER-61. While Valve is confident it will prevail on the merits in court as well, Bucher's arbitration track record belies the district court's evidence-free assertion that Respondents would "lose something of value by the move" to court. 1-ER-34.

***iii.*** Finally, the district court thought the parties' "disparity in bargaining power" and lack of negotiation reinforced its substantive unconscionability holding. 1-ER-35 (citing *Tadych*, 519 P.3d at 204). But those characteristics of a standard form contract don't establish either procedural or substantive unconscionability (*supra* pp. 28-29)—especially where, as here, there is nothing substantively unfair about the contract's terms. This case is thus nothing like *Tadych*, in which the court held that inequality in bargaining power reinforced the *substantive* unfairness of the contract's one-year limitation provision. 519 P.3d at 204; *supra* p. 54.

In fact, the practical realities—which unconscionability law requires courts to consider, *see M.A. Mortenson Co. v. Timberline Software Corp.*, 970 P.2d 803, 808-09 (Wash. Ct. App. 1999); *Bielski v. Coinbase, Inc.*, 87 F.4th 1003, 1012 (9th Cir. 2023)—show that the Current Agreement was a rational and

appropriate response to Bucher's extortionate mass-arbitration-plus-class-action scheme. Valve proposed a single forum—court—for resolving disputes in response to Bucher's filing of thousands of individual arbitrations based on the arbitration clause in the Superseded Agreement. Although Valve was prepared to arbitrate those claims (despite troubling issues like deceased claimants and serious concerns about whether Bucher actually represents all of the claimants, *see, e.g.*, 2-ER-224, 2-ER-227-28), Bucher obtained arbitral rulings that the arbitration agreement is unenforceable. Bucher then filed a putative nationwide class action against Valve based on the premise that the same arbitration agreement was *unenforceable* as to all Steam users in the United States. *Supra* pp. 10-11.

Under the circumstances, and in light of the arbitrator's rulings that the arbitration agreement was unenforceable, it was commercially reasonable for Valve to address the procedural chaos and user uncertainty, and promote fair and efficient resolution of Steam users' claims on the merits, by agreeing with Respondents and other Steam users to resolve all disputes in court. There is no basis in law for forcing Valve to entertain Bucher's attempt to secure settlement leverage by manufacturing procedural complexity. To the contrary, this Court criticized that very kind of scheme last year in *Jones*,

129 F.4th at 1183, recognizing that mass-arbitration tactics are "geared more toward racking up procedural costs to the point of forcing … a settlement than proving the allegations [necessary] to seek appropriate redress on the merits." *Id.*

*  *  *

The forum provision in the Current Agreement is neither procedurally nor substantively unconscionable. The district court erred as a matter of law in holding otherwise. And because the forum provision is enforceable, Valve has shown that it is likely to succeed on its claim that Respondents' ongoing arbitrations are unlawful.

## II. Valve satisfied the remaining *Winter* factors.

### A. Valve is suffering the irreparable harm of being forced to arbitrate disputes it didn't consent to arbitrate.

Absent injunctive relief, Valve must continue arbitrating with Respondents against its consent. That constitutes irreparable harm. Depriving a party of its contractual dispute-resolution rights and forcing it to pursue or defend claims in the wrong forum are quintessential irreparable harms, as courts have repeatedly recognized.

**1. a.** As a matter of law, "[b]eing forced to arbitrate a claim one did not agree to arbitrate constitutes an irreparable harm for which there is no adequate remedy at law." *UBS Securities, LLC v. Voegeli*, 405 F. App'x 550, 552 (2d Cir. 2011) (citing *Merrill Lynch Investment Managers v. Optibase, Ltd.*, 337 F.3d 125, 129 (2d Cir. 2003) (per curiam)); *accord, e.g.*, *Oppenheimer & Co. v. Mitchell*, No. 23-cv-67, 2023 WL 2428404, at *6 (W.D. Wash. Mar. 9, 2023) ("several courts have held that forcing a party to arbitrate a dispute that it did not agree to arbitrate constitutes per se irreparable harm"), *aff'd*, 135 F.4th 837 (9th Cir. 2025).

In *Oppenheimer*, for example, this Court affirmed an order enjoining arbitrations where "no arbitration agreement between the parties" existed. 135 F.4th at 851. "Under these circumstances," the Court continued, "forcing Oppenheimer to submit to arbitration would cause it to suffer irreparable losses in the form of time, money, and related resources." *Id.* at 850.

This Court also reached a similar result before *Winter*, holding that a company "was entitled to injunctive relief once it established that it was no longer under a contractual duty to arbitrate." *LAWI/CSA Consolidators, Inc. v. Wholesale & Retail Food Distribution, Teamsters Local 63*, 849 F.2d 1236, 1241 n.3 (9th Cir. 1988) (collecting cases). The Court rejected the union's argument

that the company was required to make an additional showing of irreparable harm or an inadequate remedy at law beyond being forced to arbitrate absent an agreement to do so. *Id.* Other courts have agreed, with the Eighth Circuit explaining that when "a dispute is non-arbitrable … the party urging arbitration may be enjoined from pursuing what would now be a futile arbitration, even if the threatened irreparable injury to the other party is only the cost of defending the arbitration and having the court set aside any unfavorable award." *McLaughlin Gormley King Co. v. Terminix International Co.*, 105 F.3d 1192, 1194 (8th Cir. 1997).

**b.** Courts have reached similar conclusions in other contexts too, underscoring that deviating from the parties' contractually specified forum for resolving their disputes constitutes irreparable harm.

For example, the Supreme Court recently held that a stay pending appeal from the denial of arbitration is automatic. *See Coinbase, Inc. v. Bielski*, 599 U.S. 736, 744 (2023). Before that, however, several courts in this Circuit applying the traditional stay factors had concluded that, when the parties have a valid and enforceable arbitration agreement that covers the claims at issue, forcing a party to litigate those claims in court "may constitute irreparable injury." *Revitch v. DirecTV, LLC*, No. 18-cv-1127, 2018 WL 5906077, at

*1 (N.D. Cal. Nov. 9, 2018) (collecting cases); *see also, e.g.*, *Echevarria v. Aerotek, Inc.*, No. 16-cv-4041, 2019 WL 3207812, at *3 (N.D. Cal. July 16, 2019); *Zaborowski v. MHN Government Services, Inc.*, No. 12-cv-5109, 2013 WL 1832638, at *2 (N.D. Cal. May 1, 2013).

The same logic applies to other situations in which a party is forced to litigate in a different forum than the one specified in the parties' contract. "Courts around the country regularly hold that the 'deprivation of a bargained-for choice of forum' constitutes irreparable harm sufficient to support an injunction." *Google LLC v. NAO Tsargrad Media*, No. 24-cv-5423, 2025 WL 964692, at *11 (N.D. Cal. Mar. 31, 2025) (alteration adopted; quoting *Nippon Shinyaku Co. v. Sarepta Therapeutics, Inc.*, 25 F.4th 998, 1008 (Fed. Cir. 2022); and collecting cases). That's because the party is forced "to expend time and effort litigating in a forum that it has agreed to avoid, and the party will never be able to get that time back." *Id.* This Court has similarly recognized, in the context of an injunction against a foreign lawsuit, that such "injunctions may be the only viable way to effectuate valid forum selection clauses." *Applied Medical Distribution Corp. v. Surgical Co. BV*, 587 F.3d 909, 919 (9th Cir. 2009).

**2.** **a.** As this well-established caselaw makes clear, Valve is suffering irreparable harm by having to arbitrate disputes it didn't consent to arbitrate but rather agreed to litigate in court. Failing to issue an injunction makes that agreement "a nullity." *Id.*

**b.** The district court's contrary conclusion was wrong. The court reasoned that the "time and money" Valve must spend in Respondents' arbitrations absent an injunction doesn't constitute irreparable harm. 1-ER-37. But as explained (at 61-63), that conclusion contravenes well-established precedent from this Court and others.

According to the district court, those precedents and principles don't apply because Valve previously had an arbitration agreement with Respondents. 1-ER-37. But as explained (at 50-52), parties are free to revoke their consent to arbitration. And the district court's attempted factual distinction has nothing to do with the holdings in *Oppenheimer* and *LAWI/CSA Consolidators*: A party would "suffer irreparable losses" if forced to arbitrate absent a contractual obligation to do so. *Oppenheimer*, 135 F.4th at 850. Indeed, the parties in *LAWI/CSA Consolidators* had likewise previously agreed to arbitrate, but the company was still entitled to an injunction halting the

pending arbitration once the duty to arbitrate was eliminated. 849 F.2d at 1241 n.3.

At bottom, then, the district court's conclusion that Valve hadn't shown irreparable harm rests on its view that the Current Agreement's dispute-resolution terms, which withdraw the parties' consent to arbitrate, are unenforceable on the merits. Because that view is wrong, so too is the district court's conclusion that Valve had not shown irreparable harm.

**B. The balance of the equities favors enjoining the arbitrations.**

The relative interests of the parties further support an injunction, as the correct view of the merits of the unconscionability issue makes clear.

**1.** As just discussed (at 60-65), Valve continues to suffer irreparable harm absent an injunction. "Forcing a party to engage in arbitration where that party is not bound to arbitrate serves no equitable purpose." *Oppenheimer*, 2023 WL 2428404, at *6.

On the other side of the ledger, Respondents will suffer no prejudice from an injunction. An injunction merely requires them to honor their contractual obligation under the Current Agreement to resolve their disputes with Valve in court. As explained (at 55-56), Respondents will not forfeit their substantive antitrust claims by proceeding in court, whether

individually or as members of the putative nationwide class in *Elliott*. Although Valve contends that no class could be certified in *Elliott*, Respondents are free to participate in that case if a class is certified. And if they prefer to file their own actions, they can do so, including with the benefit of *American Pipe* tolling based on *Elliott*.

When the party that insists on arbitrating can seek the same relief in court, it cannot claim prejudice from an injunction against an improper arbitration. For example, when a law firm tried to use a mass-arbitration campaign to block a merger, courts enjoined those improper arbitrations and noted that parallel regulatory actions and lawsuits "may very well result in the precise relief" that the arbitration claimants were seeking. *AT&T Mobility LLC v. Smith*, No. 11-cv-5157, 2011 WL 5924460, at *9 (E.D. Pa. Oct. 7, 2011); *accord, e.g.*, *AT&T Mobility LLC v. Bernardi*, Nos. 11-cv-3992 & 11-cv-4412, 2011 WL 5079549, at *12 (N.D. Cal. Oct. 26, 2011). The same is true of the pending or future court actions here.

**2.** **a.** The district court thought "an injunction would fall hard on" Respondents because, "*by the time of argument*, some had prevailed on liability or completed their merits hearings." 1-ER-37 (emphasis added).

But that's only because of the district court's own delay. Delays happen in busy courts, but the district court's delay cannot provide an equitable ground for denying Valve's request for a preliminary injunction. At the time Valve filed this lawsuit in October 2024, Respondents' arbitrations were all in their early stages, and Valve had offered to reimburse Respondents' filing fees for the arbitrations. 2-ER-250; 3-ER-347; *supra* pp. 14-15. At that time, Respondents hardly could claim prejudice from switching forums on the supposed ground that they had made progress already in the arbitration.

The district court then took nearly ten months to decide that Valve was required to file a complaint rather than a § 4 petition. 3-ER-466-77. Valve promptly did so, and even at the time Valve filed its operative complaint together with its preliminary injunction motion, the majority of the arbitrations remained in their early stages. 3-ER-347. But the district court then took over nine more months before ruling on Valve's preliminary injunction motion. 1-ER-9-41.

To sum up: The district court took nearly nineteen months to rule on Valve's request to redress "*immediate* threatened injury." *Boardman v. Pacific Seafood Group*, 822 F.3d 1011, 1022 (9th Cir. 2016) (emphasis added). It then

held that the delay helped show unconscionability and held that delay against Valve when balancing the equities.

Moreover, even taken on its own terms, the district court's assertion about the state of the arbitrations at the time of its ruling applied to only some of the arbitrations and thus couldn't justify its denial of injunctive relief across the board. At the time of the court's ruling, at least half of Respondents' arbitrations remained stayed by the arbitrators or were still otherwise not close to a ruling on the merits. 2-ER-149; 2-ER-196. The district court offered no justification for using the advanced status of *some* arbitrations to refuse to enjoin *any* arbitrations.

**b.** The district court next reasoned that Valve couldn't complain about Bucher's mass-arbitration campaign because Valve had previously chosen to include an arbitration clause and class-action waiver in the Superseded Agreement. 1-ER-37-38. That reasoning attacks a strawman. Valve was prepared to arbitrate large numbers of individual claims. But Valve rationally chose a single forum for resolving Steam users' disputes in response to Bucher's attempts to pursue the same claims on the contradictory fronts of mass arbitration and a putative class action. The equities do not favor rewarding Respondents for their counsel's attempt to have it both ways in an

attempt to create settlement leverage. *See Jones*, 129 F.4th at 1183; *supra* pp. 59-60.

### C. The public interest favors enjoining the arbitrations.

**1.** The public interest likewise favors enforcing the parties' agreement to resolve their disputes in court rather than in arbitration. Where, as here, "there is no arbitration agreement between the parties," public "policy disfavors forcing a party to arbitrate against its own wishes." *Oppenheimer*, 135 F.4th at 851; *accord, e.g.*, *Morgan Stanley & Co. v. Couch*, 134 F. Supp. 3d 1215, 1237 (E.D. Cal. 2015) (collecting decisions holding that a preliminary injunction against an arbitration "is in the public interest" when there is no enforceable arbitration agreement).

Public policy strongly favors enforcing the parties' agreement. Forum-selection clauses, including those in non-negotiable form contracts, are "prima facie valid" and serve the "salutary" purpose of specifying the "forum for dispute resolution." *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 589, 593-94 (1991); *accord Lee v. Fisher*, 70 F.4th 1129, 1142 (9th Cir. 2023). Once the district court's erroneous conclusion that the forum provision in the Current Agreement is unconscionable is set aside, public policy further favors Valve's requested injunction to give effect to the parties' choice of forum.

**2.** The district court offered two reasons why it thought the public interest pointed against Valve's requested injunction. Both lack merit.

*First*, the district court asserted that the Federal Arbitration Act's equal-footing principle prevented Valve from "abandon[ing] arbitration" once an arbitration had begun. 1-ER-39-40. That is flat wrong: Parties are free to agree to a new forum for pending disputes, both inside and outside the arbitration context. *Supra* pp. 48-52. The equal-footing principle *supports* Valve's position because it confirms that arbitration agreements are no less subject to modification or revocation than other types of contracts.

The district court cited *In re Sussex*, 781 F.3d 1065, 1073 (9th Cir. 2015), in asserting that a "muddy" arbitration process is an insufficient basis for judicial intervention. 1-ER-39-40. But in *Sussex*, the parties had indisputably agreed to arbitrate. The Court held only that courts should review assertions of arbitrator bias after, rather than during, the arbitration. 781 F.3d at 1072-73. That question isn't at issue here.

Valve has asked the courts to enjoin further arbitration proceedings because there is no longer an arbitration agreement between the parties, meaning there is no authority for the arbitrations. The determination "whether the parties' first agreement was superseded by their second" is

squarely for a court. *Coinbase*, 602 U.S. at 152. And resolving that determination in Valve's favor warrants enjoining Respondents from proceeding with their improper arbitrations.

*Second*, the district court expressed concern about the prospect of "serial forum-switching." 1-ER-39-40. But parties can agree on the forum for resolving their pending disputes, as they did here. *Supra* pp. 48-52. And, under the Current Agreement, Valve can amend its contract terms unliterally in the future only if it complies with the requirement of at least 30 days' notice and gives subscribers an opportunity to reject the changes by discontinuing use of their Steam accounts. 2-ER-281.

The district court's speculation about repeated forum-switching is also baseless. Valve did not lightly remove the arbitration clause and class-action waiver that had been in its terms for over a decade. Valve made that decision only after Bucher had obtained four arbitrator rulings that the arbitration clause was unenforceable and then pursued a putative nationwide class action in reliance on those rulings. That is not, as the district court described it, Valve's "mov[ing] the forum back and forth, according to which forum has treated it better lately." 1-ER-40. Rather, Valve has attempted to restore order and promote fair and efficient merits resolution of subscribers' claims after

Bucher attempted to pursue overlapping claims in *multiple* forums at the same time, based on *conflicting* assertions about the enforceability of Valve's dispute-resolution terms, all to try to extort a settlement whose most significant benefit would go to Bucher and his litigation funder. Neither ordinary contract principles nor common sense support forcing Valve to defend against the same claims in two forums at the same time.

More fundamentally, the issue here is whether the forum provision in the Current Agreement is enforceable—not, as the district court's comments suggest, the enforceability of hypothetical future amendments. The Current Agreement's forum provision is enforceable, for all the reasons discussed. The district court thus should have enjoined Respondents from continuing their improper arbitrations.

## CONCLUSION

The Court should reverse the district court's denial of Valve's motion for a preliminary injunction and remand with instructions to enter the requested injunction.

Dated: October 28, 2026

Respectfully submitted,

*/s/ Shay Dvoretzky*

Shay Dvoretzky
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
1440 New York Ave. NW
Washington, DC 20005
Telephone: 202-371-7000
shay.dvoretzky@skadden.com

Parker Rider-Longmaid
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
500 Boylston St.
Boston, MA 02116

Michael W. McTigue Jr.
Meredith C. Slawe
Shaud G. Tavakoli
SKADDEN, ARPS, SLATE,
MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001

Blake Marks-Dias
CORR CRONIN LLP
1015 Second Ave., Fl. 10
Seattle, WA 98104

*Counsel for Petitioner-Appellant Valve Corporation*

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

## Form 17. Statement of Related Cases Pursuant to Circuit Rule 28-2.6

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form17instructions.pdf*

**9th Cir. Case Number(s)** 26-6092

The undersigned attorney or self-represented party states the following:

○ I am unaware of any related cases currently pending in this court.

○ I am unaware of any related cases currently pending in this court other than the case(s) identified in the initial brief(s) filed by the other party or parties.

◉ I am aware of one or more related cases currently pending in this court. The case number and name of each related case and its relationship to this case are:

Valve Corp. v. Fish, No. 26-5475, Valve Corp. v. Lucas, No. 26-5477, Valve Corp. v. Graber, No. 26-5509, Valve Corp. v. Lefebvre, No. 26-5539, Valve Corp. v. Birenbaum, No. 26-5662, and Valve Corp. v. Vicente, No. 26-5668 (9th Cir.), concern the district court's decision to vacate arbitral awards and turn on the enforceability of the updated contract terms at issue in this case. Each case is being held in abeyance pending the Court's decision in this case. Valve has also moved to hold Valve Corp. v. Fish et al., No. 26-6269 (9th Cir.), in abeyance pending the Court's decision in this case. That case concerns the district court's denial of Appellants' motions to confirm those same arbitral awards, and the abeyance motion is currently pending.

**Signature** /s/ Shay Dvoretzky **Date** Oct. 28, 2026

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

**UNITED STATES COURT OF APPEALS**
**FOR THE NINTH CIRCUIT**

**Form 8. Certificate of Compliance for Briefs**

*Instructions for this form: http://www.ca9.uscourts.gov/forms/form08instructions.pdf*

**9th Cir. Case Number(s)** 26-6092

I am the attorney or self-represented party.

**This brief contains** 13,991 **words,** including 78 words manually counted in any visual images, and excluding the items exempted by FRAP 32(f). The brief's type size and typeface comply with FRAP 32(a)(5) and (6).

I certify that this brief *(select only one)*:

- (●) complies with the word limit of Cir. R. 32-1.
- ( ) is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.
- ( ) is an **amicus** brief and complies with the word limit of FRAP 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).
- ( ) is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.
- ( ) complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
  - [ ] it is a joint brief submitted by separately represented parties.
  - [ ] a party or parties are filing a single brief in response to multiple briefs.
  - [ ] a party or parties are filing a single brief in response to a longer joint brief.
- ( ) complies with the length limit designated by court order dated ____________.
- ( ) is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** /s/ Shay Dvoretzky **Date** Oct. 28, 2026

*(use "s/[typed name]" to sign electronically-filed documents)*

*Feedback or questions about this form? Email us at forms@ca9.uscourts.gov*

## CERTIFICATE OF SERVICE

I hereby certify that on October 28, 2026, I electronically filed this brief and addendum with the Clerk of the Court for the United States Court of Appeals for the Ninth Circuit by using the ACMS system. I certify that all participants in the case are registered ACMS users and that service will be accomplished by the ACMS system.

Dated: October 28, 2026

Respectfully submitted,

*/s/ Shay Dvoretzky*
Shay Dvoretzky

*Counsel for Petitioner-Appellant Valve Corporation*